# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| U.S. COMMODITY FUTURES | : | |
| TRADING COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:05-CV-2492-RWS |
| AMERICAN DERIVATIVES | : | |
| CORP., a Georgia corporation; | : | |
| NATIONAL COMMODITIES | : | |
| CORPORATION, INC., a Florida | : | |
| corporation; INTERNATIONAL | : | |
| COMMODITY CLEARING LLC, | : | |
| a Florida corporation; | : | |
| BROKERAGE MANAGEMENT | : | |
| CORP., a Georgia corporation; | : | |
| LAYNE DAVID GERSTEL; | : | |
| DEVEREUX DECATUR | : | |
| BOOTH; and DAVID N. | : | |
| MITTLER, | : | |
| | : | |
| Defendants. | : | |

## ORDER

Now before the Court are (1) Plaintiff's Motion to Compel [102]; (2)

Defendants' Motion for Reconsideration and Motion to Strike [106]; (3)

Defendants' Motion for Extension of Time to Respond to Motion to Compel

[108]; and Plaintiff's Second Motion to Compel [113].  After considering the

entire record, the Court enters the following Order.

## Background

On September 26, 2005, Plaintiff U.S. Commodities Futures Trading

Commission ("CFTC") filed a two-count complaint alleging fraud in

connection with commodity options transactions and that certain Defendants

failed to adequately supervise their employees, all in violation of the

Commodities Exchange Act, 7 U.S.C. § 1 et seq., as amended (2002) (the

"Act") and the regulations promulgated thereunder, 17 C.F.R. § 1.1 et seq. (the

"Regulations").  In addition, pursuant to § 6c of the Act, as amended, 7 U.S.C. §

13a-1 (2002), Plaintiff moved for, and was granted, an ex parte statutory

restraining order which (1) provided Plaintiff with expedited discovery; (2)

required Defendants to provide an accounting of all assets under their direct or

indirect control; (3) required Defendants to maintain business records; (4)

required Defendants to allow the immediate inspection and copying of books

and records; (5) froze certain assets of Defendants to prevent their transfer,

dissipation or disposal; and (6) ordered that Defendants appear and show cause

why a preliminary injunction should not be entered to maintain the status quo

2

and prohibit certain specified future actions which would constitute violations of the Act and Regulations.

On November 22, 2005, the parties appeared and presented evidence with respect to the preliminary injunction and asset freeze.  By Order entered November 23, 2005, the Court granted in part and denied in part Plaintiff's Motion for Preliminary Injunction.  Since that point, discovery has been ongoing, and now several discovery-related matters require the Court's attention.

## Discussion

## I.      Defendants' Motion for Reconsideration and Motion to Strike

By Order entered June 29, 2006, this Court granted Plaintiff's Motion for Leave to File Excess Pages with respect to its Motion to Compel.  Defendants move for reconsideration of that Order, and to strike Plaintiff's Motion to Compel.  For the reasons that follow, Defendants' Motion is denied.

Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice." LR 7.2(E), NDGa.  Consequently, motions for reconsideration are not to be submitted as a matter of course, but only when "absolutely necessary."  Id.  Such absolute necessity arises where

3

there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003).

Conversely, motions for reconsideration may not be used as a vehicle to present the court with arguments which have already been raised and rejected, or to "repackage familiar arguments to test whether the court will change its mind." Bryan, 246 F. Supp. 2d at 1259. Likewise, such motions "may not be used to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." Adler v. Wallace Computer Servs., Inc., 202 F.R.D. 666, 675 (N.D. Ga. 2001).

Defendants' motion is patently meritless. Their arguments in support of reconsideration do not fall within the limited range of objections that may appropriately be raised in a motion for reconsideration. Indeed, Defendants' motion consists primarily of substantive objections to Plaintiff's Motion to Compel. In view of Defendants' failure to identify any legitimate grounds for reconsideration, the Court declines to reconsider its prior Order. Accordingly, Defendants Motion for Reconsideration is hereby **DENIED**. Insofar as

AO 72A
(Rev.8/82)

Defendants move to have Plaintiff's Motion to Compel stricken from the record, that motion is similarly **DENIED**.

## II.     Defendants' Motion for Extension of Time

Defendants have not filed any response to Plaintiff's Motion to Compel. Rather, Defendants have elected to file a Motion for Reconsideration, which the Court has readily rejected above, and a Motion for Extension of Time.  In their Motion for Extension of Time, Defendants request that they be given 30 days from the date the Court rules on their Motion for Reconsideration, or in the alternative, through August 13, 2006 to respond to Plaintiff's Motion to Compel.  The Court did not grant Defendants' Motion for Extension of Time, and Defendants' alternative response period has come and gone.

When a party moves for an extension of time to file a response, and the Court does not grant that extension prior to the time the response is due, the party assumes that the court will entertain its request at its own peril.  Here, Defendants' Motion for Extension of Time is predicated upon their Motion for Reconsideration, which this Court has previously determined to be entirely meritless.  The decision to forego the filing of a response based on the pendency of that motion was Defendants' to make.  However, as any objective assessment

5

of the merits of Defendants' Motion for Reconsideration would have revealed its patent flaws, the pitfalls associated with proceeding in the manner elected by Defendants should have been obvious.

Accordingly, Defendants' Motion for extension of time is **GRANTED IN PART and DENIED IN PART**.  Insofar as Defendants' request an extension up through August 12, 2006, that request is **GRANTED *nunc pro tunc***; to the extent Defendants seek an additional 30 days to respond to Plaintiff's Motion to Compel, that request is **DENIED**.  The Court will take up Plaintiff's Motion to Compel, and in light of Defendants' failure to file any response, it is deemed to be unopposed.

## III.    Plaintiff's First Motion to Compel

Plaintiff has filed a Motion to Compel generally challenging Defendants' production of documents under Rule 34, and answers to certain interrogatories propounded under Rule 33.  Within those broad categories, Plaintiff specifically argues that Defendants have impermissibly (1) asserted repeated boilerplate objections to requests to produce and interrogatories as vague, ambiguous, overbroad, and irrelevant; (2) offered to make available documents in response to Plaintiff's requests to produce as they are kept in the ordinary course of

6

business pursuant to Rule 34, but failed to identify specific responsive documents; (3) referred Plaintiff to documents produced in answer to Interrogatories as provided under Rule 33(d), but again provided non-specific references to documents; (4) refused to produce documents which have previously been either produced to the NFA during its audits of American Derivatives or to the CFTC pursuant to previous requests under Section 4g of the Commodities Exchange Act, 7 U.S.C. § 6g; and (5) refused to produce documents which were previously inspected and/or copied by the CFTC pursuant to the Restraining Order in this case.  The Court addresses each of these objections to Defendants' production in turn.

First, with respect to Defendants numerous boilerplate objections to Plaintiff's discovery requests, the Court agrees that they are improper. Objections to requests for discovery should be "plain enough and specific enough so that the court can understand in what way the interrogatories are alleged to be objectionable." Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir. 1985).  Merely stating that a discovery request is vague or ambiguous, without specifically stating how it is so, is not a legitimate objection to discovery.  Moreover, such non-specific objections operate to

7

render the producing party the final arbiter of whether it has complied with its

discovery obligations under Rule 26 because the requesting party lacks

sufficient information to understand either the scope of the objection, or to

frame any argument as to why that objection is unfounded.  Therefore, to the

extent Defendants assert such objections, they are improper and will not be

considered by the Court.  See, e.g.,  McLeod, Alexander, Powel & Apffel, P.C.

v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990) (objections that document

requests were overly broad, burdensome, oppressive, and irrelevant were

insufficient to meet objecting party's burden of explaining why discovery

requests were objectionable).  Accordingly, insofar as Plaintiff seeks to compel

the production of documents and answers to interrogatories over such

objections, its motion in granted.[1]

---

[1] The Court notes that ironically, many of Plaintiff's objections to Defendants' discovery responses are no more specific than Defendants' objections to Plaintiff's discovery requests.  For example, after reciting Plaintiff's request and Defendants' response, Plaintiff's objections to Defendants Answer to Interrogatory 8 states:

    (a)    Boilerplate Objections
    (b)    Prior Possession of Documents Purportedly Containing Responsive Information Does Not Relieve American Derivatives' Obligation
    (c)    Reference to Entire Universe of Documents for Responsive Information Is Improper
    (d)    Rule 33(d) Is Inapplicable Because the Commission's

Second, with respect to Defendants' production of documents under Rule 34, the Court has addressed that issue extensively in connection with Plaintiff's Second Motion to Compel. See infra Part IV.A. The Court's discussion contained therein applies with equal force to the Plaintiff's objections here. Plaintiff's Motion, insofar as it relates to Defendants' failure to comply with its obligations under Rule 34 is therefore denied.

Third, Plaintiff objects to Defendants' answers to its interrogatories insofar as those answers impermissibly refer to overly broad and general categories of documents. Federal Rule of Civil Procedure 33(d) provides that in responding to interrogatories, a party may refer to records, as opposed to providing a narrative, if those records are clearly identified.[2] The Court has

---

|     |                                                                                                                                           |
| --- | ----------------------------------------------------------------------------------------------------------------------------------------- |
|     | Burden Is Far Greater Than American Derivatives' Burden                                                                                    |
| (e) | Rule 33(d) Is Inapplicable Because American Presidents Has Failed to Specify the Records from Which Responsive Information May Be Obtained  |
| (f) | Vagueness                                                                                                                                  |

(Mot. to Compel at 128-29.) This is continued for each and every request to produce and interrogatory answer.

[2] Rule 33(d) provides:

Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon

9

reviewed Defendants' answers to Plaintiff's interrogatories, and finds that as a

general matter, they are reasonably specific.  Moreover, the Court cannot

conclude that these requests, as a general matter, fall outside the scope of Rule

33(d) because the burden on Plaintiff would be substantially greater than the

burden on Defendant.  (See, e.g., Pl.'s Interrog. No. 8 ("For each customer

identified in Interrogatory No. 6, state the total net investment and total loss for

each customer.").)  As many of those responses the Court has reviewed appear

to be entirely proper, and as Plaintiff has not pointed to specific deficiencies,

Plaintiff's motion as it relates to any failure to comply with Rule 33(d) is

denied.

       With respect to the Plaintiff's fourth and fifth objections to Defendants'

---

whom the interrogatory has been served or from an
examination, audit or inspection of such business records,
including a compilation, abstract or summary thereof, and
the burden of deriving or ascertaining the answer is
substantially the same for the party serving the interrogatory
as for the party served, it is a sufficient answer to such
interrogatory to specify the records from which the records
may be derived or ascertained and to afford to the party
serving the interrogatory reasonable opportunity to examine,
audit or inspect such records and to make copies,
compilations, abstracts or summaries. A specification shall
be in sufficient detail to permit the interrogating party to
locate and to identify, as readily as can the party served, the
records from which the answer may be ascertained.

10

discovery responses—namely, that Defendants have refused to produce any documents previously produced to either the CFTC or the NFA—Plaintiff has failed to provide an adequate basis for the Court to determine the merits of its motion.  While it is true that as a general matter, the party must produce those responsive documents in its possession, the fact that those documents have been previously produced, some even in this very action, is not irrelevant.  Indeed, the burden on Defendants of producing documents for a second time may be far greater than that imposed on Plaintiff of locating the requested documents within those previously provided to it.  Accordingly, Plaintiff's Motion in this respect is denied.

## IV.    Plaintiff's Second Motion to Compel

### A.    Obligations Under Rule 34

The fundamental dispute appears to center on one basic issue—namely, the scope of Defendants' obligations under Rule 34 when producing documents as they are kept in the ordinary course of business.  Plaintiff does not dispute that under Rule 34, Defendant may elect to produce documents as they are kept in the ordinary course of business.  Plaintiff apparently believes, however, that Defendants intend to merely open their files, thereby making available a wide

11

array of both responsive and non-responsive documents, and leaving Plaintiff to sift through large quantities of unrequested materials in an effort to locate documents potentially responsive to its discovery requests.  In view of these concerns, and Defendants' stated intent to produce documents as they are kept in the ordinary course of business, the Court takes this opportunity to make clear the parties' respective obligations under Rule 34.

The Court has previously addressed this issue in the case of Williams v. Taser Int'l, Inc., 2006 WL 1835437 (N.D. Ga. 2006).  As the Court explained:

> Rule 34 specifically requires that the party producing documents "produce them as they are kept in the usual course of business or . . . organize and label them to correspond with the categories in the request." . . .  While the party producing "cannot attempt to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents," the plain language of Rule 34 makes clear that "a responding party has no duty to organize and label the documents if it has produced them as they are kept in the usual course of business." Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp., 222 F.R.D. 594, 598 (E.D. Wis. 2004); see also Rowlin v. Ala. Dep't of Pub. Safety, 200 F.R.D. 459, 462 (M.D. Ala. 2001) ("[U]nder Rule 34, it is up to the producing party to decide how it will produce its records, provided that the records have not been maintained in bad faith."); cf. Fed. R. Civ. P. 34 advisory committee note to 1980 amendment

> (explaining that this provision of Rule 34 was
> intended to facilitate the discovery of relevant
> information, and to prevent parties from "deliberately
> ... mix[ing] critical documents with others in the hope
> of obscuring significance.").

Williams, 2006 WL 1835437, at *7.  The Court went on to explain, however,

that while Rule 34 does allow a party to produce responsive documents as they

are kept in the ordinary course of business, it does not explain what it means to

produce documents in that manner.  Thus, the Court made clear that the

producing party "has an obligation to organize the documents in such a manner

that [the requesting party] may obtain, with reasonable effort, the documents

responsive to their requests."  Id.  Thus, simply directing the requesting party to

the file cabinets and saying, "Here are our documents as they are kept in the

ordinary course of business," would be wholly insufficient to satisfy the

producing party's obligations under Rule 34.  Rather, to the extent the

producing party elects to produce responsive documents as they are kept in the

ordinary course of business, it must either direct the responding party to the

location or locations within its files where documents responsive to each of

their specific requests may be found, or provide a key or index to assist the

responding party in locating the responsive documents.  See id.  Furthermore,

13

the Court emphasized that if it were to conclude that the filing system utilized by the producing party was so disorganized as to prevent the requesting party from making a meaningful review of the requested documents, it would not hesitate to order that documents be organized and specifically labeled as responsive to particular requests.  Id. (citing Wagner v. Dryvit Sys., Inc., 208 F.R.D. 606, 610-11 (D. Neb. 2001) ("producing large amount of documents in no apparent order does not comply with a party's obligation under Rule 34"); Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976) (stating that a party "may not excuse itself from compliance with Rule 34 . . . by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition.")).  Finally, the Court emphasized that if the producing party were to be " 'overly generous' in identifying responsive documents so as to unduly burden [the requesting party] in their search of those documents," the Court would similarly require that documents be organized and specifically labeled as responsive to particular requests.  Id.

14

Here, Defendants have offered to make responsive documents available for inspection and copying and to produce those documents as they are kept in the ordinary course of business.  That is Defendants' option under Rule 34. That said, Defendants do not satisfy their Rule 34 obligations by merely opening their files, and leaving Plaintiff to sift through documents in an effort to locate those that are responsive to its requests.  Rather, Defendants are obligated to provide some reasonable assistance to Plaintiff in the location of responsive documents.  Thus, Defendants must either direct Plaintiff to the specific location or locations within its files where documents responsive to each of their requests may be found, or provide a key or index to assist Plaintiff in locating the responsive documents.  That said, Defendants have no obligation to determine which documents have been previously obtained by Plaintiff through the expedited discovery ordered by this Court, and to limit their production to only those documents not contained within the subset of records previously obtained by Plaintiff.[3]  Finally, there is some indication that the

---

[3] Plaintiff makes numerous references to Defendants' apparent unwillingness to stipulate to the authenticity of certain documents. While the Court expects that the parties will work together in good faith, Defendants are not required to make any such stipulations.

filing system utilized by Defendants may be disorganized and hamper Plaintiff's ability to conduct a meaningful search for responsive documents. (See Mot. to Compel [102] at 10-11.)  Simply stated, if Defendant maintains its records in the ordinary course of its business in a manner that prevents any meaningful search of those documents, then the Court would not hesitate to require Defendants to identify, categorize and separately label documents responsive to each of Plaintiff's requests for production.  With that admonition, Plaintiff's motion to compel is denied insofar as it relates to this issue.  From this point forward, the Court expects the parties to work diligently and in good faith to coordinate the remaining document production in this case.

### B.    Specific Issues

#### 1.    Request No. 16

Plaintiff requests "all documents that relate to attorneys' fees incurred or paid by or on behalf of American Derivatives and/or Brokerage Management since January 1, 2004," apparently on the premise that such documents are relevant to Defendants' business practices, and reasonably calculated to lead to the discovery of admissible evidence such as "customer complaints and/or the creation of 'straw' corporations." (Pl's Mot. to Compel at 14 n.5.)  Defendants,

16

in their Response, object to this request on a number of grounds, including

relevance and privilege, and Plaintiff did not address this request in its reply

brief.  The Court agrees with Defendants, and in the absence of a more

compelling justification by Plaintiff, declines to order the requested production.

> 2.    Trading Activity Database

Plaintiff seeks access to Defendants' "Trading Activity Database,"

otherwise known as the "Commodity Management System."  Plaintiff asserts

that the database contains "voluminous, detailed information about American

Derivatives customers and employees, including details regarding trading

activity, profits and losses, and broker commissions." (Pl.'s Mot. to Compel at

15.)  Plaintiff requests that defendants be required to either provide access to

this database or produce a duplicate copy of the database in a fully accessible

format.  Defendants respond that to their knowledge the database is not

password-protected, but have pledged to work with Plaintiff to resolve this

issue.

The Court sees no reason why this should pose any substantial problem.

Defendants are ordered to either produce a new, fully accessible copy of the

Trading Activity Database, or to provide Plaintiff with the information

AO 72A
(Rev.8/82)

necessary to access this database not later than 10 days from the date this Order is entered on the docket.

        3.     <u>Requests Nos. 30, 41, and 43</u>

Plaintiff requests that Defendant Gerstel produce "[a]ll documents that relate to any communications or agreements between you and any current or former American Derivatives employees," any current or former American Derivatives customer, and all "notes, memoranda or other documents" concerning any American Derivatives customers.  Insofar as these documents have not been previously produced, Defendant is ordered to produce them to Plaintiff.  That said, Defendant remains free to produce these documents as they are kept the ordinary course of business, and in accordance with both Rule 34 and the Court's instructions above.

        4.     <u>Interrogatories 16 and 17</u>

Plaintiff's Interrogatory No. 16 requests that Gerstel identify "all current or former customers [Gerstel] contacted, or attempted to contact, from September 28 2005 through the present. . . ."  Plaintiff's Interrogatory No. 17 requests the same information with respect to current or former employees. Plaintiff asserts that while Gerstel has referred Plaintiff to those individuals who

18

provided declarations filed in support of Defendants' Memorandum in

Opposition to Plaintiff's Motion for Preliminary Injunction, additional

employees have been contacted since those proceedings were conducted.

      To the extent Defendant states that he has attempted to contact each and

every current or former customer that maintained an account with American

Derivatives, that information should be available through Defendant's business

records, and thus, Gerstel need not specifically identify these individuals.  To

the extent that employees, in addition to those who submitted declarations for

use at the preliminary injunction hearing, have been contacted, Defendant is

ordered to identify those individuals.  Defendant should provide a complete

response to Interrogatory 17 not later than 10 days from the date this Order is

entered on the docket.

### Conclusion

      For the reasons stated herein, Plaintiff's Motion to Compel [102] is

**GRANTED IN PART and DENIED IN PART**; Defendants' Motion for

Reconsideration and Motion to Strike [106] is **DENIED;** Defendants' Motion

for Extension of Time to Responded to Motion to Compel [108] is **GRANTED**

**IN PART and DENIED IN PART**; and Plaintiff's Motion to Compel [113] is

AO 72A
(Rev.8/82)

**GRANTED IN PART and DENIED IN PART**.   All additional production expressly ordered herein shall be served on Plaintiff not later than ten (10) days from the date this Order is entered on the Court's docket.  The parties shall bear their own costs and attorney's fees for these motions.


        **SO ORDERED** this   30th   day of March, 2007.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)