**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

U.S. COMMODITY FUTURES
TRADING COMMISSION,

      Plaintiff,

    v.

AMERICAN DERIVATIVES
CORP. et al.,

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.
1:05-CV-2492-RWS

## ORDER

     This case is before the Court on Plaintiff CFTC's Motion for Summary Judgment [130], Defendant Brokerage Management's Motion to Compel HomerBonner to Transfer Records of American Derivatives Corp., Brokerage Management Corp., Layne David Gerstel and Deveraux Decatur Booth [161], and Defendant David N. Mittler's Motion to Compel the Transfer of Defendants' Records [162].  After considering the entire record, the Court enters the following Order.

AO 72A
(Rev.8/82)

## Background[1]

Plaintiff Commodity Futures Trading Commission ("CFTC") filed this action against several defendants, including Defendant David N. Mittler, Defendant Brokerage Management Corp. ("Brokerage Management"), and American Derivatives Corp. ("American Derivatives").  The Florida-based law firm of HomerBonner was retained to represent all defendants, with the exception of David Mittler.  But in November 2007, Defendants sought to substitute Drohan, Lee & Kelley LLP ("DLK") as counsel.  In an Order issued on January 17, 2008, the Court permitted HomerBonner to withdraw [157].  Upon substitution, DLK was informed that HomerBonner would not provide any files to DLK, as legal fees remained outstanding.  Because Defendants disputed these fees, DLK requested only those documents that were provided to the firm by Defendants during the pendency of the action.  The files in question include account files for customers, financial records, and tapes of recorded compliance conversations with customers.  HomerBonner refuses to transfer

---

[1]These facts are taken from the Plaintiff's Complaint, from the Plaintiff's Statement of Undisputed Material Facts, from Defendant's Response to Plaintiff's Statement of Undisputed Material Facts, and from Defendants' Motions to Compel. The Court makes no findings as to the facts stated herein.

2

these files to DLK until the outstanding balance is paid.  Defendant Brokerage

and Defendant David N. Mittler have submitted motions to the Court to compel

the transfer of these records (Dkt. Nos. [161] and [162]).

Additionally, Plaintiff CFTC has moved for summary judgment against

Brokerage Management on the issue of whether a "common enterprise" exists,

thus giving rise to their joint and several liability, between Brokerage

Management and American Derivatives.  According to Plaintiff's Statement of

Undisputed Material Facts (Dkt. No. [130-3]) and Defendant Brokerage

Management's Response (Dkt. No.[139]), the following facts are undisputed:

(1)  Defendant Layne Gerstel is the sole owner of both Brokerage Management and American Derivatives.

(2)  Defendant Gerstel held all of the officer and director positions at both Brokerage Management and American Derivatives.

(3)  Defendant Gerstel was responsible for the day-to-day operations at both Brokerage Management and American Derivatives.

(4)  Brokerage Management and American Derivatives list the same principle office address in their registrations with the Georgia Secretary of State.

(5)  Brokerage Management and American Derivatives occupied the same office space.

(6)  Brokerage Management shared a telephone line with American Derivatives during some period of time.

(7)  Brokerage Management allowed American Derivatives to utilize office space leased by Brokerage

Management.

(8)     Computers and other office equipment used by American Derivatives were owned by Brokerage Management and/or Gerstel.

(9)     Gerstel used his office to conduct business for both Brokerage Management and American Derivatives.

(10)    Brokerage Management provided a substantial portion of American Derivatives' administrative services.

(11)    Several employees worked for both Brokerage Management and American Derivatives.

(12)    Brokerage Management ceased having employees shortly after American Derivatives ceased doing business.

(13)    American Derivatives was Brokerage Management's only "client," and no substantive efforts were undertaken by Gerstel to acquire additional "clients."

(14)    Gerstel is unable to determine how much of his time was spent working for Brokerage Management and how much was spent working for American Derivatives.

(15)    Brokerage Management handled essentially all of American Derivatives' bills and paid those bills out of an account held in Brokerage Management's name on which Gerstel was the sole signatory.

(16)    Brokerage Management's expenses were paid using an American Express Card account held by Gerstel.

(17)    Brokerage Management made car payments and paid health insurance premiums for certain employees of American Derivatives.

(18)    Gerstel "randomly" determined which expenses paid by Brokerage Management were attributable to American Derivatives' operations.

(19)    The compensation that Brokerage Management received for its services to American Derivatives "wasn't clearly defined."

4

**Discussion**

## I. Motion for Summary Judgment

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute

5

over that fact will not affect the outcome of the suit under the governing law.

Id.  An issue is genuine when the evidence is such that a reasonable jury could

return a verdict for the non-moving party.  Id. at 249-50.

In resolving a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986)).  "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal

citations omitted); see also Matsushita, 475 U.S. at 586 (stating that once the

moving party has met its burden under Rule 56(c), the nonmoving party "must

do more than simply show there is some metaphysical doubt as to the material

facts").  With this standard as a foundation, the Court turns to the case at hand.

Based on a review of the record and the applicable law, the Court concludes that Plaintiff's Motion for Summary Judgment (Dkt. No. [130]) is due to be granted.  Courts look to a variety of factors to determine whether a "common enterprise" exists with regard to violations of the Commodity Exchange Act, 7 U.S.C. § 1 et seq.  These factors include "common control; the sharing of office space and officers; whether business is transacted through a maze of interrelated companies; the commingling of corporate funds and failure to maintain separation of companies; unified advertising; and evidence which reveals that no real distinction existed between the Corporate Defendants." FTC v. Wolf, 1996 WL 812940, *7 (S.D. Fla.) (internal quotations and citations omitted); accord FTC v. Ameridebt Inc., et al., 343 F. Supp.2d 451, 462 (D. Md. 2004); FTC v. Skybiz.com, Inc., 2001 WL 1673649, *5 (N.D. Okla.); CFTC v. Noble Wealth Data Info. Servs., Inc. et al., 90 F. Supp. 2d 676, 690 (D. Md. 2000), aff'd in part, vacated in part, remanded in part, CFTC v. Baragosh, 278 F.3d 319 (4th Cir. 2002), cert. denied, Baragosh v. CFTC, 537 U.S. 950 (2002); FTC v. J.K. Publs., Inc., et al., 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000).  Courts also look to whether the dealings between the corporations are conducted at arms length.  Sunshine Art Studios, Inc., et al. v.

7

FTC, 481 F.2d 1171, 1173 (1st Cir. 1973) (holding that courts look to a variety

of factors including whether entities are distinct and operate at arms length);

CFTC v. Wall St. Underground, Inc., 281 F. Supp. 2d 1260, 1271 (D. Kan.

2003) (citing Sunshine Art Studios, 481 F.2d at 1175).  When one or more

entities operate as a common enterprise, each is jointly and severally liable for

the unlawful acts committed by the other.  Wolf, 1996 WL 812940, *8;

Ameridebt, Inc., 343 F. Supp. 2d at 691; Wall St. Underground, Inc., 281 F.

Supp. 2d at 1271; J.K. Publs., Inc., 99 F. Supp. 2d 1202.

    In light of the undisputed facts in this case, a common enterprise clearly

existed between Brokerage Management and American Derivatives.  Defendant

Brokerage Management admits that the two corporate entities shared common

control by Defendant Mr. Gerstel, occupied the same office space, utilized the

same office equipment, and operated the entities under the same administrative

structure.  Defendant Brokerage Management further admits that it failed to

keep corporate expenses separate from one another and generally left the line

drawn between the two entities "undefined."  Instead of disputing these facts,

Defendant argues that the Court does not have the authority to make a

determination of joint and several liability at this stage in the case.  Brokerage

8

Management maintains that, absent a determination of liability against American Derivatives for violating the regulations at issue in the case, liability cannot attach to Brokerage Management.

In support of this argument, Defendant cites several cases, none of which is on point. While Defendant is correct that a district court may put off a declaratory judgment concerning indemnification until primary liability has attached to a party, Defendant does not cite a single case in support of the proposition that a district court cannot decide an issue affecting joint and several liability at the summary judgment phase.

Plaintiff seeks summary judgment on the narrow issue of whether a common enterprise existed between Brokerage Management and American Derivatives. The Court has ample ability to make a determination of this question in order to narrow the issues before trial. Federal Rule of Civil Procedure 56(a) provides that a claimant may move for summary judgment "as to all or any part" of any of its claims, and Federal Rule of Civil Procedure 56(d) provides that uncontroverted material facts raised in the course of a summary judgment motion that does not dispense with all of the pending claims may be deemed established for purposes of trial. See FED. R. CIV. P. 56. The

9

undisputed facts in this case conclusively establish that Brokerage Management and American Derivatives did not operate at arms length, that Brokerage Management existed to facilitate the business of American Derivatives, and that no real distinction existed between the two corporations; in short, they constituted a common enterprise.  For these reasons, Plaintiff's Motion for Summary Judgment (Dkt. No. [130]) shall be **GRANTED**.

## II. Motions to Compel

### A. Defendant Brokerage Management's Motion to Compel

Defendant Brokerage Management has submitted a Motion to Compel the Transfer of records of American Derivatives, Brokerage Management, Mr. Layne David Gerstel, and Mr. Deveraux Decatur Booth (Dkt. No. [161]).  As explained above, the law firm of HomerBonner is holding these records in an attempt to persuade Defendants to pay disputed legal fees.

In determining which law to apply to a lien dispute such as this, the Court looks to the venue state of the litigation as the most important factor in determining choice of law.  See, e.g., Peresipka v. Elgin, J. & E. Ry. Co., 231 F.2d 268, 271 (7th Cir. 1956) (finding that Illinois law governed the existence of an attorney's lien "irrespective of whether the contract was signed in Indiana

10

or Illinois, the record unmistakably discloses that it was to be performed in the latter state."); Great Lakes Transit Corp. v. Marceau, 154 F.2d 623, 625 (2d Cir. 1946) (finding New York law governed an attorney's lien where the contract was signed in Illinois, but where the court found that the parties intended New York law to govern); Lehigh & N.E.R. Co. v. Finnerty, 61 F.2d 289, 290 (3d Cir. 1932) ("The employment of an attorney of New Jersey and the bringing of suit in New Jersey indicate that the parties intended from the first that suit should be brought in that state.  And being brought there, the laws of that state control as to the lien.").  Here, HomerBonner is a Florida law firm.  But Georgia is the principal place of Defendants' business, the place in which the alleged violations of federal law in the main action took place, the venue in which the government chose to commence and HomerBonner contracted to defend the action, and the venue in which the trial will ultimately take place.  Thus, it is clear that Georgia law should apply to the issue of whether HomerBonner's "lien on the file" entitles the firm to withhold these evidentiary documents.

It is well-established under Georgia law that "an attorney's ethical obligation not to cause prejudice to his or her client is paramount over rights under the lien statute.  Accordingly, an attorney may not to the prejudice of a

11

client withhold the client's papers or properties upon withdrawal as security for unpaid fees." Swift, Currie, McGhee & Hiers v. Henry, 581 S.E.2d 37 (Ga. 2003), (citing State Bar of Georgia, Formal Advisory Opinion No. 87-5 (September 26, 1988)).  While an attorney has a right to perfect a lien against papers and money of their clients in their possession for services rendered to them, such right generally must yield to an attorney's ethical obligation not to prejudice a former client's ongoing suit by withholding the client's file in order to collect an unpaid fee.  Stearns v. Murphy, 587 S.E.2d 247, 251 (Ga. Ct. App. 2004).  In the case at hand, Defendants' ability to combat the charges in the upcoming trial will be severely prejudiced by HomerBonner's refusal to transfer these documents to Defendants' new attorneys.  Defendants represent that most of the evidence at issue is documentary evidence including company records, account records, tapes of customer conversations, and financial records.  It is apparent to the Court that this evidence was entrusted to HomerBonner solely for Defendants' use as exculpatory evidence at trial and that there is no attorney work-product present within these documents.  It is not difficult to imagine how important this evidence will be for Defendants as trial grows near in this case.

12

Accordingly, the Court concludes that Brokerage Management's Motion to Compel [161] shall be **GRANTED**.

### B. Defendant David N. Mittler's Motion to Compel

Defendant Mittler has filed a similar Motion to Compel with the Court. (Dkt. No. [162]).  The reasoning presented in favor of granting Brokerage Management's Motion to Compel apply even more strongly to the case of Mr. Mittler, as he is not even a part of the dispute between certain defendants and their former counsel regarding the release of the materials in question.  For the same reasons as those recounted above, Defendant David N. Mittler's Motion to Compel [162] shall be **GRANTED** as well.

### Conclusion

In conclusion, Plaintiff CFTC's Motion for Summary Judgment [130] is hereby **GRANTED**.  Defendant Brokerage Management's Motion to Compel HomerBonner to Transfer Records of American Derivatives Corp., Brokerage Management Corp., Layne David Gerstel and Deveraux Decatur Booth [161] is hereby **GRANTED**.  Defendant  David N. Mittler's Motion to Compel the Transfer of Defendants' Records [162] is also hereby **GRANTED**.  After considering the entire record, the Court enters the following Order.

13

**SO ORDERED**, this __23rd__ day of June, 2008.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

14